IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ELIJAH C.[1],

    **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of
Social Security,**

    **Defendant.**

Case No. 20-cv-01143-SPM

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) benefits and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423 and 42 U.S.C. §§ 1382 and 1382c, respectively[2] (Doc. 1).

## PROCEDURAL HISTORY

On March 15, 2018, plaintiff applied for DIB, alleging a disability onset date of April 15, 2016. (Tr. 175-181). On that same date, plaintiff also applied for SSI, alleging

---

[1] In keeping with the court's practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.,* and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.,* and 20 C.F.R. pt 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

the same disability onset date. (Tr. 182-187). On June 21, 2018, plaintiff was advised that he did not qualify for benefits because he was not considered disabled or blind, so his claims were disapproved. (Tr. 111-114). On August 27, 2018, plaintiff requested reconsideration. (Tr. 115-116). On September 21, 2018, plaintiff was advised that his claim had been independently reviewed by a physician and disability examiner; however, the previous determination was found to be proper under the law (Tr. 119-121). On November 16, 2018, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") because he disagreed with the determination and claimed to be disabled and unable to work due to pre-existing conditions that affect his daily life. (Tr. 127-129). After holding an evidentiary hearing, the ALJ denied the application on December 3, 2019. (Tr. 14-35). Plaintiff submitted additional evidence dated January 3, 2020 and requested review of the ALJ's decision. (Tr. 7-13). On August 26, 2020, the Appeals Council found no reason under its rules to review the ALJ's decision and denied plaintiff's request for review. (Tr. 1-6). In accordance with the foregoing, the ALJ's decision is the final agency decision subject to judicial review. Plaintiff has exhausted administrative remedies and filed a timely complaint with this Court (Doc. 1).

## ISSUE(S) RAISED BY PLAINTIFF

In his brief, plaintiff does not raise any specific arguments against the ALJ's decision, instead, he provides general information on his personal history and claims to be disabled due to a number of conditions[3] (Doc. 42, p. 1). He claims that his disability

---

[3] In his brief, plaintiff identifies the following conditions to support his disability contention: (1) PTSD; (2) Anxiety disorder; (3) Depression; (4) Bipolar; (5) ADHD; (6) Borderline personality disorder; (7) COPD;

claim file contains "overwhelming evidence of both a physical and mental disability" and that it should have been granted at the initial level (Id., p. 2). He further claims to have represented himself to the best of his ability after being denied an attorney throughout this process (*Id.*).

## APPLICABLE LEGAL STANDARDS

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the

---

(8) High Cholesterol; and, (9) Hypertension.

claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (emphasis added). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since

April 15, 2016, which was the alleged date of onset. (Tr. 19). He found that plaintiff met the insured requirements of the Social Security Act through June 30, 2019. (*Id.*). The ALJ found the plaintiff had severe impairments of chronic obstructive pulmonary disease ("COPD"), obesity, post-traumatic stress disorder ("PTSD"), depression, anxiety, bipolar disorder, and personality disorder. (Tr. 20).

Regarding residual functional capacity ("RFC"), the ALJ found the plaintiff had the RFC to perform medium work[4], as defined in 20 CFR 404.1567(c) and 416.967(c), except he needs to avoid concentrated exposure to respiratory irritants such as fumes, odors, dust gases, and poor ventilation. (Tr. 24). The ALJ further found that plaintiff was able to understand, remember, and carry out instructions for simple tasks on a sustained basis and that he can tolerate occasional interaction with coworkers, supervisors, and the general public for purposes of performing simple work tasks. (Tr. 24-25).

In the statement of RFC, the ALJ noted that he considered all symptoms and the extent they were consistent with the objective medical evidence. (Tr. 25). The ALJ was not persuaded by Ms. Johnson's questionnaire responses but found that the findings proffered by Dr. DiFonso and Dr. Voss were consistent with and supported by the record. (Tr. 26). The ALJ also noted that plaintiff reported to Dr. Feinerman that he was seeking disability benefits because of his anxiety and depression and inferred that plaintiff did not consider his physical problems as particularly limiting. (*Id.*).

---

[4] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

Based on the testimony of the vocational expert, the ALJ concluded that plaintiff was not disabled because he was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 29-30).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the records is directed to the points raised by plaintiff.

### 1. Agency Forms

Plaintiff was born on February 11, 1982. (Tr. 175). He originally became unable to work because of his disabling condition on April 15, 2016. (*Id.*). Plaintiff claimed the following conditions limited his ability to work: (1) PTSD; (2) COPD; (3) Anxiety; (4) Depression; (5) Bipolar; (6) ADHD; (7) Borderline Personality Disorder; (8) HBP; (10) High Cholesterol; and, (11) Nerve Damage in his left arm. (Tr. 199).

### 2. Evidentiary Hearing

Plaintiff was not represented at the hearing on September 12, 2009, but indicated that he was ready to proceed with the hearing and to represent himself. (Tr. 44-45). Plaintiff did not ask any questions during the hearing. (Tr. 51).

Plaintiff resides with his 15-year old son. (Tr. 45). His grandmother used to live with him and was his primary caregiver, but she recently passed away. (Tr. 51). Plaintiff has not driven since a bad car accident in 2007. (*Id.*). He has his GED and obtained a culinary arts degree in 2011 or 2012. (*Id.*). Plaintiff last worked at J. Kaiser Power

Station from December 2016 through February 2017, even though he had a pending disability case. (Tr. 46).

Plaintiff testified that he could not work because of his anxiety, depression and bipolar, that started in 2012 and worsened over the years. (Tr. 47). He explained that he had mood swings, was always on edge and constantly worried. (Tr. 48). He also testified about lung issues, including COPD and bronchitis, that affect his breathing ability and worsen with strenuous activities. (Tr. 49). Plaintiff did mention any other medical or mental health conditions[5]. (Tr. 51)

Plaintiff typically wakes around 7:00 a.m. to help get his son off to school. (Tr. 50). They eat a lot of canned and frozen foods. (*Id.*). Plaintiff does not do much housework and spends most of the day in bed because of his depression. (*Id.*). A family member does the grocery shopping and yard work. (*Id.*). Plaintiff testified that he did not have any hobbies or friends that he visited. (Tr. 51).

A vocational expert (VE) also testified. (Tr. 52). The ALJ asked him a hypothetical question about RFC, except that the ALJ asked the VE to assume a limitation to light work. (*Id.*). The VE testified that a person with that RFC assessment could do jobs at the light exertional level. (Tr. 53). The jobs she identified (mail clerk, sorter, and tagger) were light physical demand level, unskilled, and available in the national economy. (*Id.*).

---

[5] When asked if there was anything else the ALJ needed to know in deciding his claim, plaintiff answered, "Not off the top of my head." (Tr. 51).

### 3. Relevant Medical Records

Plaintiff received primary medical care at Shawnee Healthcare. He was originally seen by Beth Heaney, APN, until her departure, then his primary medical care was overseen by Nick Turner, PNP, and his psychiatric care by Rachel Johnson, APN-BC.

A February 2012 notation is the first medical record regarding plaintiff's mental health and it references complaints of stress and depression, and said he bottled up his emotions until he lashed out. (Tr. 526). At that time, plaintiff was prescribed Effexor and referred to a primary care physician. (Tr. 529).

On May 16, 2016, plaintiff was referred for counseling services by Beth Heaney, APN, to strengthen his adaptive coping skills and increase his emotional awareness. (Tr. 313). At that time, his personal treatment goals were to find employment and better manage his moods and symptoms. (*Id.*). His primary symptom was depression, but his diagnoses were bipolar affective disorder and borderline personality disorder. (Tr. 317-319).

On September 2, 2016, plaintiff appeared at Shawnee Health Care for established care of blood pressure and back pain. (Tr. 306). The records on that date reference the following problems with onset date of 01/01/2000: Tobacco dependence, impotence of organic origin, bipolar disorder, generalized anxiety disorder, alcohol dependence, cannabis dependence, constipation, depressive disorder, as well as the following from an onset date of 11/11/2014: migraine, backache, gastritis and duodenitis. (Tr. 306-308).

Plaintiff followed up with Beth Heaney and his medications were changed and titrated between 2015 – 2018. On each visit, she noted his mental status. In December 2016, the record reflects "overall relative stability". (Tr. 359).

On April 5, 2017, plaintiff saw Nick Turner with complaints of shortness of breath and tingling in left hand. (Tr. 288). Plaintiff also indicated he was depressed. (Tr. 289). He was assessed with hypertension, headache, backache and paresthesia of upper limb, given treatment recommendations, and told to follow up in 4 months. (*Id.*). He was also told to follow up with Beth Heaney for psychology. (*Id.*).

On August 21, 2019, Rachael Johnson, PMHNP-BC saw plaintiff for transition of his care and noted that his depression was really bad and he wanted to return to medicine he had previously been on. (Tr. 534-539).

On September 11, 2019, plaintiff followed up with Rachael Johnson and she noted, his mood was "euthymic"[6], and emphasized that he was "getting better but overwhelmed with ssi". (Tr. 577). On that same date, Ms. Johnson executed a handwritten mental residual functional capacity assessment and confirmed his diagnoses of bipolar disorder, borderline personality disorder, and post traumatic stress disorder. (Tr. 521-523). Following his assessment, she noted that his current diagnoses "caused him problems with mood, executive functioning and reality … contributed to his inability to hold a job at this time". (Id.).

---

[6] Euthymic is the state of being in euthymia, which is a relatively neutral mood that is neither extremely happy nor extremely sad.

### 4. State Agency Consultations

Two state agency consultants assessed plaintiff's mental RFC based upon a review of the record. The initial review was done on June 15, 2018 and the reconsideration was done on September 20, 2018. (Tr. 63-65, 91-93). It was concluded that plaintiff's understanding and memory, sustained concentration and persistence, and social interaction were not significantly or only moderately limited and he not have any adaptation limitations.

## ANALYSIS

The ALJ reasonably concluded that the record supports a conclusion that plaintiff was capable of light exertional work as of his date last insured. Plaintiff does not offer any specific challenge to the conclusion beyond asserting that "[T]he disability claim file contains overwhelming evidence of both physical and mental disability. This claim should have been granted at the initial level …". (Doc. 42).

The ALJ fairly summarized the relevant medical evidence. He also properly discounted the opinions of Dr. Adrian Feinerman and Dr. Fred Klug. Dr. Feinerman's assessment was generic and provided scant useful information. Indeed, Dr. Feinerman failed to consider the plaintiff's diagnosis of COPD along with his history of obesity when he found plaintiff able to "sit, stand, walk, hear, lift, carry, handle objects, and handle funds on his own behalf". (Tr. 507-520). As the ALJ articulated, those findings would limit plaintiff to at least medium exertional level with respiratory limitations. (Tr. 26). While the ALJ found Dr. Fred Klug's consultative mental status examination to be more persuasive, Dr. Klug failed to provide any discussion of mental functional limitations to

assist in the framing the RFC. (Tr. 501-506).

As for treating providers, the ALJ correctly weighed the questionnaire responses of Rachael Johnson, APN, who had only seen plaintiff on two occasions. The ALJ was not persuaded that her office notes supported the marked limitations she identified. (Tr. 531-539). The ALJ was not required to fully credit that opinion; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (internal citation omitted). A treating source's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

The ALJ is required only to "minimally articulate" her reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ easily met the minimal articulation standard here.

The Court has carefully reviewed the record and the ALJ's decision and has not detected any legal errors. To the contrary, the ALJ relied upon the findings of Drs. DiFonso and Voss, both of whom performed mental RFC assessments, as set forth *infra*. The medical evidence and the state agency consultants' opinions support the conclusion that plaintiff was capable of doing some jobs as of her date last insured. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the

Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012).

Finally, plaintiff complains that he was denied legal representation. As the Court explained in its Order denying his motion for appointment of counsel – he has no statutory or constitutional right to counsel here, he did not demonstrate that he made a diligent attempt to obtain counsel on his own; and, there was nothing before the Court to indicate that he could not coherently present his case (*See* Doc. 6). Additionally, throughout the pendency of his social security claim and appeal, plaintiff was oft advised that he had the right to an attorney. (Tr. 124, 128, 131-138, 149-152, 167-169.) Plaintiff also affirmatively agreed with the ALJ at his hearing that he had been advised of the right to representation, and he chose to proceed with the hearing and represent himself. (Tr. 42-43).

While this Court is mindful of plaintiff's condition, plaintiff has not identified any specific errors requiring remand nor has he demonstrated that the ALJ's decision was not supported by substantial evidence. The ALJ reasonably concluded that the record supported a conclusion that plaintiff was "not disabled" on the date last insured. The ALJ weighed the evidence and concluded that the record did not support a determination that plaintiff could not work. Ultimately, it was plaintiff's burden, not the ALJ's, to prove that he was disabled. *Summers v. Berryhill,* 864 F.3d 523, 527 (7th Cir. 2017). Therefore, ALJ Martin's decision must be affirmed.

## CONCLUSION

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED: August 16, 2022**

*/s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**